UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | Civ. No. 22-974 (JWB/DTS) |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| Public Housing Agency, Terri Gindorff, Ying Moua, Corina Serrano, and Dominique McCormick, | |
| Defendants. | |

Wilbert Glover, pro se Plaintiff.

Kara M. Kisch, Esq., Office of the St. Paul Attorney, counsel for Defendants.

Pro Se Plaintiff Wilbert Glover lost his housing voucher when he was terminated from the Housing Choice Voucher Program. Glover asserts that he was removed from the program as the result of racial animus. Defendant Public Housing Agency (the "Agency") contends Glover was terminated for violating the terms of the voucher program. Defendants seek summary judgment asserting that Glover was properly terminated and that any conceivable claim by Glover fails as a matter of law. After review of all submissions, Defendants' motion for summary judgment is granted.

## BACKGROUND

Glover is a resident of St. Paul who was selected to participate in the United States Department of Housing and Urban Development's Housing Choice Voucher Program,

commonly referred to as Section 8, on May 18, 2020. (Doc. No. 32-1, Serrano Aff. ¶ 10.) At that time, he signed a document outlining his responsibilities for program participation, specifically initialing each item. (*Id.* ¶ 13.) Those requirements included that he provide any information requested by the Agency to determine income and refrain from engaging in threatening, abusive, or violent behavior towards Agency staff. (*Id.*, Ex. 2 at 2, Ex. 3 at 1.) Any violation of the requirements provide cause for terminating his participation in Section 8. (*Id.*)

Under the agreement, Glover was required to exercise his voucher by July 14, 2020. (*Id.*, Ex. 2 at 1.) After two lengthy extensions, Glover timely exercised his voucher on a lease in St. Paul that began on January 14, 2021. (*Id.* ¶ 10.)

On July 22, 2021, the Agency sent a letter to Glover stating that it had become aware that he had been receiving Social Security benefits beginning November 1, 2020, and that he needed to provide documentation of those benefits to the Agency by August 5, 2021. (*Id.*, Ex. 4 at 1.) Glover communicated with Terri Gindorff, an Agency employee, via phone on August 18, 2021. Gindorff reiterated on the call that the Agency had received information from the Internal Revenue Service and Social Security Agency that Glover was receiving Social Security benefits and that he was required to submit documentation of those benefits. (*Id.*, Ex. 5 at 1.) Glover disputed that he was receiving Social Security benefits. (*Id.*) According to Gindorff, she ended the call after Glover called her a racist and started using profanities. (*Id.*) Glover does not dispute that he said those things, but he alleges that Gindorff told him on the call that "all you black people are alike or the same trying to defraud the government." (Doc. No. 1, Compl. 6.)

On August 30, 2021, Agency staff again notified Glover in writing that he was delinquent on providing documentation of his Social Security benefits and that his conduct violated his signed Family Obligations Certifications. (Serrano Aff. at 24.) The written notice stated that the violation is grounds for termination of assistance and that all future communication with him would be conducted in writing. (*Id.*) The notice also reasserted the Agency's demand for a Social Security Award letter, verification of General Assistance benefit, and a written explanation of why he did not report Social Security income to the Agency. (*Id.*) After receiving no response, on October 11, 2021, Agency staff notified Glover in writing that his Section 8 voucher would be terminated on December 31, 2021, for failure to supply the requested documents and for using profane and abusive language towards an Agency staff member. (*Id.*, Ex. 7 at 2.) The letter also notified Glover that he could submit a written request for an informal hearing to review the decision. (*Id.*)

Glover requested an informal hearing which was then scheduled for December 15, 2021. (*Id.*, Ex. 8 at 1; Ex. 9 at 1.) After receiving notice of the hearing, Glover left a voicemail on December 2, 2021, requesting information about where to submit documents for use during the hearing. (*Id.*, Ex. 10 at 1.) Agency staff answered his question in writing on December 7, 2021. (*Id.*) As evidence that he was not receiving Social Security benefits, Glover submitted an identity theft police report, dated October 17, 2019, to the Agency. (Compl. 10; Doc No. 18-1, Ex. 4 at 1; Ex. 5 at 1.) A hearing was held on December 15, 2021, but Glover failed to appear. (Serrano Aff., Ex. 11 at 1.) On December 29, 2021, the Agency notified him that his Section 8 assistance had been

3

terminated. (*Id.*)

## DISCUSSION

### I.  Legal Standard

Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the facts are considered in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Pro se materials must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted).

### II.  Analysis

Glover does not specify in his Complaint what law, statute, or Constitutional provision he believes Defendants violated. Instead, he generally asserts 28 U.S.C. § 1331 as the legal basis for federal jurisdiction (Compl. ¶ 4), but that is not a statute that enables individuals to bring claims in federal court. Construing Glover's pleading liberally, he could be asserting three potential claims: that Defendants, when terminating his Section 8 housing voucher, violated his due process rights; violated the Americans with Disabilities Act ("ADA"); and violated the anti-discrimination provisions of the Fair Housing Act. (*Id.* ¶¶ 7–10.)

A.     ADA Claim

Discrimination under the ADA requires showing: (1) that Glover has a disability as defined by the ADA; (2) that he is otherwise qualified to participate in the housing program; (3) that he was excluded from participation in, denied the benefits of, or subjected to discrimination by the housing program; and (4) that he receives federal financial assistance. *See* 42 U.S.C. § 12132. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(2). The ADA does not specifically define what it means for an impairment to substantially limit a major life activity, but courts have found that a limited standing limitation—like being unable to stand for up to an hour—is not a disability. *Gretillat v. Care Initiatives*, 481 F.3d 649, 653 (8th Cir. 2007).

Glover asserts that he has both a physical and a mental impairment. He provided a self-assessment documenting his belief that he cannot stand for long periods (such as 30 minutes) and has severe difficulty in learning new tasks. (Doc. No. 23-1 at 1.) He provided a treating source statement signed by a psychologist that describes him as having mild limitations in areas pertaining to learning, recalling, and using information. (*Id.* at 5.) On this form, however, the psychiatrist describes Glover as having no limitations understanding and carrying out detailed but uninvolved written or oral instructions, remembering locations and work-like procedures, and understanding and carrying out very short and simple instructions. (*Id.* at 6.) The record, therefore, does not support finding that any of Glover's major life activities are substantially limited based on his mild limitations. Therefore, the ADA claim fails on that basis alone.

Even assuming Glover has a disability as defined by the ADA, he has provided no evidence he was excluded from participating in the housing program based on his disability. Glover's only assertions in the Complaint that relate to a disability claim are that he was unable to find a unit by September 12, 2020, due to his disability and that he was entitled to a 60-day extension to search for a unit. (Compl. ¶ 7.) Glover *was* granted two extensions totaling over 60 days, and he ultimately exercised his voucher on November 24, 2020. (Serrano Aff. ¶ 10.) Therefore, any argument based on being denied an extension is not supported by the record. Summary judgment is appropriate on any ADA claim asserted by Glover in his Complaint.

B.  **Due Process Claim**

Due process under the Fourteenth Amendment requires a government assistance recipient like Glover to have timely and adequate notice of the reasons for a proposed termination and a pre-termination hearing with limited procedural safeguards. *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970). The statute creating Section 8 benefits specifically provides for a notice of termination that briefly states the reasons for the decision, explains the participant's right to request a hearing to contest the termination, and provides the timeframe to request the hearing. 24 C.F.R. § 982.555(a)(1)(iv), (a)(2), (c)(2). Courts have upheld the exercise of this statutory provision as consistent with due process. *Awnuh v. Pub. Hous. Agency of City of Saint Paul*, Civ. No. 19-2765 (ECT/TNL), 2020 WL 7047789, at *6 (D. Minn. Dec. 1, 2020).

Glover was given notice of his benefits termination consistent with the statute. (Serrano Aff., Ex. 7 at 1–2.) It is evident Glover received the notice, as he requested a

hearing to dispute his termination on the grounds that he was not in receipt of Social Security benefits and was the victim of identity theft. (*Id.*, Ex. 8 at 1; Compl. ¶ 12.) Written notice of the hearing date was mailed to Glover on November 9, 2021, and it is evident he received this notice because he left a voicemail on December 2, 2021, asking where to submit documents for the hearing. (*Id.*, Ex. 9 at 1; Ex. 10 at 1.) However, Glover failed to appear at the hearing without explanation. (Serrano Aff. ¶ 22.) Due to Glover's absence, the hearing officer entered a default finding for Glover's termination and a letter was sent to Glover notifying him of the finding. (*Id*. ¶¶ 22–23.) The default finding after Glover's failure to appear is consistent with the Agency's Section 8 Admission and Occupancy Policies: "If the participant fails to appear at the scheduled hearing . . . the original determination of the [Agency] shall become final and take effect immediately." (Serrano Aff. ¶ 12, Ex. 1.) The fact that Glover disagrees with the termination decision does not mean he was not provided due process.

The record reflects that Glover received all process due to him under the statute. And he has not presented evidence that disputes the facts of the process he received. Therefore, no genuine issue exists on Glover's due process claim and summary judgment is granted.

    **C.**    **Fair Housing Act Claim**

Glover also appears to allege that his termination from the Section 8 voucher program was the result of racially racial discrimination, which the Fair Housing Act prohibits. *See* 42 U.S.C. § 3604(b).

Fair Housing Act disparate treatment claims are tested under a three-stage

framework, known as the *McDonnell Douglas* framework. *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). The plaintiff must first set out a prima facie case of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to give some legitimate nondiscriminatory reason for its action. If the defendant satisfies this burden, the plaintiff must then show by a preponderance of the evidence that the legitimate reasons asserted by the defendant are a mere pretext. *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992). Summary judgment is warranted if the plaintiff produces no direct evidence of discriminatory intent or indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* framework. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006). Direct evidence of discriminatory intent does not include decisionmakers' statements that are not related to the decision-making process and must be sufficient to support finding that an illegitimate factor motivated the decision. *See id.*

Glover's support for finding racial discrimination is his allegation that an Agency staff member made racially disparaging remarks during a phone call. (Compl. ¶ 8.) Glover does not contend or substantiate through evidence that these remarks were made as part of the process of deciding his benefits eligibility, and he has provided no evidence showing the alleged statements motivated the Agency's decision to terminate his voucher following the hearing. On the other hand, Defendants have presented evidence showing that Glover's program termination was based on his violations of the participation agreement as articulated in the notices mailed to him. Because Glover has not presented evidence creating a genuine issue supporting an inference of discriminatory intent, his

Fair Housing Act claim fails.

## ORDER

Based on the file, record, and submitted materials, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 29) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: December 12, 2023                            *s/Jerry W. Blackwell*
                                                   JERRY W. BLACKWELL
                                                   United States District Judge